IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| PATRICK JAMES HOWARD, #1527296 | § | |
| VS. | § | CIVIL ACTION NO. 6:12cv913 |
| A. DAVIS, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Patrick James Howard, a prisoner previously confined at the Skyview Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on November 27, 2012. On February 7, 2013, the Court conducted an evidentiary hearing in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff was given the opportunity to fully discuss the factual basis of his claims. Several prison officials were in attendance during the hearing, including Assistant Warden William Motal, Nurse Kathy Grey and Regional Grievance Officer Karen Norman. All of the witnesses testified under oath.

The Plaintiff complained about an incident that occurred on May 12, 2012. Defendants Davis and Thigpen were working in the Plaintiff's housing area. Davis opened the food slot in the Plaintiff's cell door and offered him a food tray that was incorrect because it included tomatoes. The Plaintiff is allergic to tomatoes. The Plaintiff accepted the tray, but he asked to see a supervisor. Davis

1

responded by throwing the food tray on the floor in the hallway. The Plaintiff had his hand in the food slot opening at the time. Officer Thigpen told him to take his hand out of the food slot and she would take care of the situation. In the mean time, Davis walked back towards the Plaintiff's cell. Instead of calling a supervisor, Davis attempted to slam the food slot door on the Plaintiff's arm. The Plaintiff replied, "That's a use of force. You have to call for the supervisor." Davis, however, grabbed his arm and pulled it upward until it popped. Thigpen responded by calling out Davis' name. Realizing what he had just done, Davis exclaimed, "Offender let me go or I'm going to gas you!" Davis then took out a can of OC gas, shook it up and sprayed the Plaintiff on his body. Davis proceeded to call a supervisor and reported that the Plaintiff had assaulted him. The Plaintiff denied assaulting Davis; nonetheless, he received a disciplinary case for assaulting him.

The Plaintiff testified that he sued Thigpen because she witnessed the entire incident and failed to call a supervisor. She also lied about what she observed in order to cover up Davis' actions.

The Plaintiff testified that he did not see medical personnel until the following day. He experienced swelling in his arm. He characterized the swelling as a hyper-extended arm with minor swelling. He acknowledged that he did not sustain any lasting injuries. With respect to the chemical agent sprayed on him, the Plaintiff was not given the opportunity to decontaminate at that time. After a shift change, he was permitted to take a shower and a new set of clothes was provided to him.

The Plaintiff filed a Step 1 grievance about the use of force incident. He filed a second Step 1 grievance after he received the disciplinary case. He complained that Defendant Brooks, a grievance officer, returned the second grievance as redundant. The Plaintiff stressed that the first grievance concerned the use of force incident, while the second grievance concerned the disciplinary case. He complained that Brooks did not process his second Step 1 grievance. He also complained that he never received a response from the first Step 1 grievance in order to file a Step 2 grievance.

Warden Motal testified under oath that inmates are supposed to stay at the back of their cells while food trays are being distributed. When an inmate jacks the food slot, an officer should call for a supervisor. If an inmate persists in jacking the food slot, then the supervisor may authorize the use of a chemical agent. With respect to decontamination, inmates may wash their faces in their cells if they have access to water. He added that the effects of a chemical agent should dissipate on its own, although inmates may be permitted to take a shower depending on the severity of the situation.

Nurse Kathy Grey testified under oath that the medical records reveal that a nurse made an entry about a use of force incident on May 12, 2012 at 4:42 p.m. She recorded that the incident occurred at 4 p.m. There is no record of a use of force physical actually being conducted. The nurse's notes indicate that the Plaintiff grabbed the officer's arm and that a chemical agent was deployed. A mental health note, dated May 14, 2012, recorded that the Plaintiff asserted that Davis grabbed his arm and twisted it without any injuries.

Regional Grievance Officer Karen Norman testified that grievance records reveal that the Plaintiff exhausted his administrative remedies about the disciplinary case in August 2012. In May 2012, he filed a Step 1 grievance about the use of force incident. He subsequently filed a second Step 1 grievance, which was returned as redundant. She noted that he was supposed to wait until after the disciplinary proceeding was actually concluded to file a Step 1 grievance about the disciplinary case.

The Plaintiff gave the Court permission to review his prison records. The records reveal that the Plaintiff filed a Step 1 grievance about the use of force incident in Grievance Number 2012160515. Assistant Warden Webb filed the following reply: "A copy of your grievance has been included with the UOF report (MO-02513-05-12) for further review." The second Step 1 grievance was dated May 16, 2012, which was returned by Defendant Brooks as redundant to 2012160515 on May 17, 2012.

The records also included the disciplinary records filed as a result of the incident. The Plaintiff was charged with assaulting Officer Davis by grabbing his left arm in Case Number 20120251494. He received a copy of the charges on May 15, 2012. A disciplinary hearing was conducted on the following day. The Plaintiff was found guilty based on the charging officer's report and statement at the hearing. The punishment imposed included remaining at Line Class 3 and the loss of 15 days good time. The Plaintiff was permitted to file a grievance about the disciplinary case beyond the normal deadlines. Grievance records reveal that the disciplinary case was upheld at both the Step 1 and Step 2 levels.

<u>Discussion and Analysis</u>

The Plaintiff's primary claim involves allegations that Officer Davis subjected him to excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id*. at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id*. A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id*. at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id*. The Plaintiff has alleged facts sufficient to give rise to an inference that Officer Davis arguably subjected him to

4

excessive use of force. He should be permitted to proceed with his excessive use of force claim against Officer Davis.

A second claim concerns the disciplinary case the Plaintiff received. In analyzing this claim, the Court initially notes that federal courts are courts with limited jurisdiction having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress. *Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006). The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to federal violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may maintain a civil rights lawsuit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). Complaints about disciplinary matters concern the Due Process Clause. *See Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). A plaintiff may have a basis for a lawsuit about a disciplinary case if it implicates a protected liberty interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Jenkins v. Livingston*, 388 Fed. Appx. 417, 419 (5th Cir. 2010). Texas prison inmates have a protected liberty interest only if they lose good time and are eligible for release on mandatory supervision. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The records submitted during the *Spears* hearing reveal that the Plaintiff is ineligible for release on mandatory supervision due to his convictions for aggravated assault with a deadly weapon and aggravated robbery. The loss of good time in this case did not involve a protected liberty interest. His release date was not affected by the loss of good time. Due to the absence of a protected liberty interest, the Plaintiff does not have a basis for a potentially meritorious lawsuit about the disciplinary case. It is further noted that if the Plaintiff actually had a protected liberty interest in this case, then his remedy would be habeas corpus in nature

and the civil rights claim would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). *See Evans v. Baker*, 442 Fed. Appx. 108, 110 (5th Cir. 2011). The Plaintiff's claims about the disciplinary case fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The disciplinary claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In light of the foregoing discussion and analysis, the Plaintiff's claims against Officer Thigpen should be dismissed to the extent that he sued her in conjunction with his claims about the disciplinary case. It is further noted that his complaint that she made a false statement does not rise to the level of a constitutional claim, which is necessary for a potentially meritorious civil rights lawsuit. Claims such as slander, libel and malicious prosecution are matters that are protected by state law. *See Geter v. Fortenberry*, 849 F.2d 1550, 1556 (5th Cir. 1988).

It is further noted that the Plaintiff does not have a basis for a potentially meritorious claim against Officer Thigpen with respect to the excessive use of force claim. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thigpen did not use any force against the Plaintiff, thus he does not have a basis for a successful civil rights lawsuit against her. He also sued her for conspiracy. To prove a conspiracy, plaintiff must prove an actual deprivation of a constitutional right. *Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). Mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under 28 U.S.C. § 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (*en banc*). The Plaintiff has not alleged facts showing that Thigpen engaged in acts that

6

deprived him of a constitutional right. The claims against Thigpen fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against her should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The final defendant is Mrs. Brooks, the unit grievance officer, who returned his second Step 1 grievance about the disciplinary case. Fundamental to any civil rights case, a plaintiff must show an injury as a prerequisite to recovery under § 1983. *McCord v. Maggio*, 927 F.2d 844, 849 (5th Cir. 1991). *See also Crowder v. Sinyard*, 884 F.2d 804, 812 n. 8 (5th Cir. 1989), *cert. denied*, 496 U.S. 924 (1990). In the present case, the Plaintiff was subsequently able to file another Step 1 grievance about the disciplinary case. He was able to pursue his grievance remedies, thus he cannot show harm because of Mrs. Brooks' actions.

The claims against Brooks must be dismissed for the additional reason that claims about grievance matters do not provide a basis for a potentially meritorious lawsuit. Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with how their grievances were processed:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. The Plaintiff's claims

7

against Brooks fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against Mrs. Brooks should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In light of the foregoing discussion and analysis, it is accordingly

**ORDERED** that the Plaintiff may proceed with his excessive use of force claim against Officer Andrew Davis. It is further

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **18** day of **February, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE